COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Judges Humphreys, O'Brien and Raphael
Argued at Lexington, Virginia


JOHN THOMAS KEENE

                                           OPINION BY
v.      Record No. 0843-21-3         JUDGE MARY GRACE O'BRIEN
                                            APRIL 19, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Richard C. Patterson, Judge

Nicholas B. Compton (Chafin Law Office, P.C., on brief), for
appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


John Thomas Keene ("appellant") contends that the court erred by denying his pretrial

motion for bond. Appellant is awaiting trial on four felony charges: abduction, in violation of Code

§ 18.2-47; statutory burglary with intent to commit murder, rape, robbery, or arson, in violation of

Code § 18.2-90; attempted murder, in violation of Code §§ 18.2-26 and -32; and violation of a

protective order by furtively entering the home of a protected party, in violation of Code

§ 16.1-253.2. Appellant argues that the court did not properly apply Code § 19.2-120 when it

denied bond.

## BACKGROUND

On February 12, 2020, appellant was charged with the abduction of Kimberly Keene, his

estranged wife. He was released on bond, and a protective order was issued against him.[1]

_____

[1] The protective order was not in the record; however, the parties agreed that it contained a
provision prohibiting appellant from having contact with Keene or going to her residence.

Despite the protective order, appellant entered Keene's residence on August 12, 2020; he was arrested again and held without bond. On January 5, 2021, while appellant was incarcerated awaiting his preliminary hearing, the JDR court granted him a medical furlough for surgery. The court imposed specific conditions, including requirements that appellant "reside in the home with his mother and father and only leave their home for documented medical appointments[,] . . . be in the presence of his mother, father[,] or sister at all times (except for sleeping)," and "not have any contact with the victim." The residence requirement was later modified to allow appellant to "reside at all times in the home of his sister," who lived next door to his parents. The other conditions remained unchanged.

The JDR court subsequently determined that appellant violated those requirements and, at his preliminary hearing on the abduction charge, revoked the furlough and ordered appellant held without bond. Appellant was indicted for abduction and three other felonies resulting from the August 12 incident: attempted murder; burglary with intent to murder, rape, or rob; and violation of a protective order.

After indictment, appellant filed a bond motion in circuit court. At the hearing, the court reviewed body camera footage taken by the officer who responded to Keene's residence on August 12. The footage included Keene's statement to the officer that she heard appellant trying to break in and she unsuccessfully attempted to close the door, but appellant pushed his way inside, telling Keene, "You're going to f-ing die tonight." At that point, Keene fled to a neighbor's home. The body camera video also included footage from Keene's home security camera, which showed appellant walking towards her once he was inside.

The Commonwealth proffered that after the incident, appellant told a friend that he went to the residence "to kill [his wife] but couldn't do it" and told a police officer that he "f-ed up and . . . broke in and went after her."

Tammy Null, appellant's girlfriend, testified that before appellant was arrested on August 12, they were living together in Bluefield, Virginia. She acknowledged that appellant violated the medical-furlough requirements to remain in the presence of his parents or sister and to return home immediately after medical appointments. Null testified that she took appellant to some of his medical appointments and they stopped at a restaurant after two of the appointments. She explained that appellant ignored the requirement to remain in his parents' presence because he did not want to expose them to COVID-19.

After argument, the court noted that appellant had no prior criminal record and was "employed as a FedEx or UPS driver." The court advised counsel that it would rule in an opinion letter, which it issued later that day.

In the letter, the court stated that it was "aware" of the mandate contained in Code § 19.2-120(A) "that a judicial officer shall admit a [defendant] to bail" unless there is probable cause to believe that he will not appear for trial or that his release would "constitute an unreasonable danger to himself, family or household members or the public." The court reviewed the procedural and factual history of the case and it referred to the events shown on the video and the proffered statements that appellant made to two witnesses. The court noted that appellant was on bond for an alleged abduction of the same victim at the time of the August 12 incident and was subject to a protective order barring him from contact with her. The court also considered appellant's violation of the conditions of his medical furlough. Ultimately, because the court determined that appellant's release would constitute "an unreasonable danger to himself, family or household members or the public," it denied bond.

ANALYSIS

Although appellant frames his assignment of error as a denial of his constitutional right to a reasonable bond, he primarily argues that the court misapplied the presumption favoring bond in

- 3 -

Code § 19.2-120 and incorrectly applied a now-obsolete presumption against bond, from a prior version of the statute.

An appellate court reviews a circuit court's decision to grant or deny bail for an abuse of discretion. *See Commonwealth v. Duse*, 295 Va. 1, 7 (2018). In so doing, the appellate court defers to the judgment below and will "not reverse merely because it would have come to a different result in the first instance." *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013) (quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008)). Nonetheless, a court "by definition abuses its discretion when it makes an error of law." *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)).

Appellant argues that the court committed an error of law by failing to apply the presumption contained in Code § 19.2-120. Code § 19.2-120(A) establishes a presumption in favor of bond, unless the court finds "probable cause to believe" that the accused "will not appear for trial" or "[h]is liberty will constitute an unreasonable danger to himself, family or household members as defined in [Code] § 16.1-228, or the public."

This statute, effective July 1, 2021, deviated from the predecessor statute addressing bond. *See* 2021 Va. Acts ch. 337, Sp. Sess. I. Although the former version of Code § 19.2-120(A) contained the same initial requirement that a defendant be granted bond unless there was probable cause to believe he would fail to appear for trial or "his liberty will constitute an unreasonable danger to himself or the public," former Code § 19.2-120(B) also established a rebuttable presumption *against* bond if a defendant was charged with certain offenses.[2] The presumption against bond was abrogated in the new statute. Instead, Code § 19.2-120(B) now contains factors

---

[2] Specifically, the former rebuttable presumption against bond applied to offenses including: "(1) An act of violence as defined in [Code] § 19.2-297.1; (2) An offense for which the maximum sentence is life imprisonment or death; . . . [and] (6) Any felony committed while the person is on release pending trial for a prior felony." Code § 19.2-120(B) (Supp. 2020) (amended 2021).

for the court to consider when determining an accused's risk of flight or whether his release would "constitute an unreasonable danger." They are:

> (i) the nature and circumstances of the offense; (ii) whether a firearm is alleged to have been used in the commission of the offense; (iii) the weight of the evidence; (iv) the history of the accused or juvenile, including his family ties or involvement in employment, education, or medical, mental health, or substance abuse treatment; (v) his length of residence in, or other ties to, the community; (vi) his record of convictions; (vii) his appearance at court proceedings or flight to avoid prosecution or convictions for failure to appear at court proceedings; and (viii) whether the person is likely to obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness, juror, victim, or family or household member as defined in [Code] § 16.1-228.

A court making a bond decision "has a duty to articulate the basis of its ruling sufficiently to enable a reviewing court to make an objective determination that the court below has not abused its discretion." *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015). Here, the court issued a two-page opinion letter. *Cf. Commonwealth v. Thomas*, 73 Va. App. 121, 130 (2021) (noting that "brief [oral] statements" did not sufficiently explain its bond ruling). Nothing in the amended version of Code § 19.2-120 eliminating the presumption against bond removes a court's obligation "to articulate the basis for its ruling" on bond as set out in *Shannon* and *Thomas*. *See Shannon*, 289 Va. at 206; *see also Thomas*, 73 Va. App. at 129 (requiring a court to state the basis of its ruling "in light of the public policy underlying the laws providing for prompt and meaningful" review of bail decisions (quoting *Shannon*, 289 Va. at 206)).

In that letter, the court applied Code § 19.2-120(B) to the salient facts presented at the bond hearing. The court considered not only the nature and circumstances of the August 12 offense, but also the weight of the evidence when it examined whether appellant was likely to "threaten, injure, or intimidate, or attempt to threaten, injure or intimidate a prospective . . . victim." *See* Code

§ 19.2-120(B)(i), (iii), (viii). In so doing, the court specifically referred to the video recording that depicted the events of August 12.

The court also considered factors that would favor appellant's motion for bond. During the hearing, the court acknowledged that appellant did not have a criminal record and was employed, circumstances to be considered under Code § 19.2-120(B)(iv) and (vi), and that there was no evidence that appellant was armed at the time of the offense, a factor in Code § 19.2-120(B)(ii).

However, the court noted that at the time of the August 12 incident, appellant was on bond for another offense against the same victim and was subject to a protective order. Further, his bond had been revoked for his admitted failure to comply with the court-ordered conditions of his medical furlough.

The court reviewed the basic facts, including that appellant was charged with abduction, statutory burglary, attempted first-degree murder, and felony violation of a protective order and that Keene was the victim of all the alleged crimes. The letter referred to allegations that appellant was intoxicated and had made death threats during the August 12 incident, and it described the police officer's video footage depicting appellant forcibly entering Keene's home in violation of both the protective order and the conditions of his bond. The court also noted that appellant's medical furlough was revoked because he violated the conditions of release.

In support of his contention that the court erred in denying bond under Code § 19.2-120(B), appellant points out that Keene was not injured and he was "staggering drunk" when he broke into her home. However, for the court to deny bond it only needed to find "probable cause" that appellant's liberty would pose a danger to himself or others; it was not required to make a determination based on proof beyond a reasonable doubt or even a preponderance of the evidence. *See* Code § 19.2-120(A). Probable cause has been described as "a fluid concept," *Illinois v. Gates*, 462 U.S. 213, 232 (1983), that "deals with probabilities and depends on the totality of the

circumstances," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *see Doscoli v. Commonwealth,* 66 Va. App. 419, 427 (2016).  There is no formula for determining probable cause; it is a "flexible, common-sense standard."  *Slayton v. Commonwealth*, 41 Va. App. 101, 106 (2003) (quoting *Texas v. Brown,* 460 U.S. 730, 742 (1983)); *see also Evans v. Commonwealth,* 290 Va. 277, 287 (2015) (reiterating that probable cause "does not demand all possible precision" (quoting *Herring v. United States*, 555 U.S. 135, 139 (2009))).

Appellant's contention that the court incorrectly relied on the presumption contained in the former version of Code § 19.2-120 is belied by the court's letter opinion.  The court reviewed the evidence that was presented at the hearing, as well as the proffered facts and procedural history of the case.  It was only after doing so that the court determined that under the factors in Code § 19.2-120(B), appellant's continued liberty "would constitute an unreasonable danger to himself, family or household members or the public" under Code § 19.2-120(A)(2).  Nowhere in its opinion did the court apply or even refer to a presumption against bond.  The court did not rely on any incorrect or inappropriate considerations; instead, it considered the escalating seriousness of appellant's charges, which were alleged to have occurred while he was awaiting trial for other offenses against the same victim, as well as the balance of several factors enumerated in Code § 19.2-120(B).

Accordingly, we do not find that the court abused its discretion in denying appellant a pretrial bond, and we affirm the court's decision.

*Affirmed.*