COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Decker and O'Brien
Argued at Richmond, Virginia

HASSAN CHRISTOPHER ATKINS

                                                       OPINION BY
v.       Record No. 1542-16-2       JUDGE MARLA GRAFF DECKER
                                                        JULY 5, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Paul W. Cella, Judge

B. Thomas Bledsoe (The Law Office of B. Thomas Bledsoe, P.C., on
briefs), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Hassan Christopher Atkins appeals his convictions for three counts of breaking and entering and three counts of grand larceny, in violation of Code §§ 18.2-89 and 18.2-95.[1]  The appellant argues that the evidence of the text messages and tweet recovered from his cellular telephone were inadmissible because the Commonwealth failed to prove that he was the person who sent those messages.  We conclude that the Commonwealth sufficiently established that the appellant was the person who authored the challenged messages and therefore adequately authenticated the evidence.  Consequently, the convictions are affirmed.

## I.  BACKGROUND

This case involves a short string of burglaries and thefts from three businesses.  On August 23, 2015, Deputy Michael Fiedler, with the Powhatan County Sheriff's Office, responded

---

[1] The appellant also was convicted of possession of burglarious tools and failure to appear, in violation of Code §§ 18.2-94 and 19.2-128, but those convictions are not subjects of this appeal.

to Quality Data Systems, which sells and services banking equipment, after a break-in was reported. When Fiedler arrived, the glass in the side entry door was completely shattered. On the ground among the glass he found a "ceramic portion" and conducting rod that appeared to be pieces of a spark plug.[2] Cash in the amount of $1,100 had been stolen. As a result of the damage to the property, the owner secured the door with plywood and pressboard before leaving for the night.

Later that night, or in the early morning hours, the door was broken again. More items were stolen, including three money counter machines and a digital camera.

On August 23 or 24, 2015, another burglary was discovered, this time at SMG Imports, a car dealership. The glass front door was shattered, and the office doors were broken. A laptop computer was missing. Additionally, keys to a "BMW coupe" were taken from inside the office, and the car was stolen.

Around "the 23[r]d or 25th" of that same month, a burglary also was discovered at a third location, Arborscapes, a tree care company.[3] The door was "kicked in," and two laptop computers were missing. One of the stolen computers was an "Apple MacBook" with the serial number C02P1HBXG3QH. A cellular phone and checks made payable to Arborscapes also were taken.

Approximately a week later, Lieutenant Danny Smith, with the Powhatan County Sheriff's Office, was on routine patrol. Near the burglarized businesses, he saw a car being driven erratically, so he stopped the vehicle. The appellant was the front seat passenger. Smith

---

[2] Another deputy sheriff explained that spark plugs can be used to break windows.

[3] The three businesses were in very close proximity to each other. Arborscapes and SMG Imports shared the same front door, but had separate locked office doors.

saw a ski mask and rubber gloves in the car on the floor of the rear passenger compartment. Additionally, Lieutenant Smith found a drill and two other masks.

A backpack found at the appellant's feet contained school papers bearing his name, checks payable to Arborscapes, cameras, and three spark plugs.[4] One of the cameras was the one stolen from Quality Data Systems.

During the traffic stop, Detective Mike Wentworth noticed that the appellant wore "Nike flip-flops" that looked like the shoes of one of the individuals who appeared in the surveillance footage of the break-in at Arborscapes.[5] Wentworth also found a cellular telephone. The appellant identified the phone as his and provided law enforcement with the passcode.

In connection with the investigation, law enforcement officers searched the appellant's home. They found one of the stolen money counters in the appellant's bedroom.

At trial, Detective Wentworth identified the cell phone that the appellant had acknowledged as belonging to him. Robert Brown, a special agent with the High Technology Crimes Division of the Virginia Department of State Police, analyzed the appellant's phone. He testified that a social media application ("app") installed on the phone had been created with an email address containing the appellant's name. The phone contained stored photos of an Apple laptop computer. Also stored on the phone was a "screen shot" of a single Twitter message, or tweet.[6] The tweet included a photograph of the money counter that was found in the appellant's

---

[4] The checks were specifically identified as the ones stolen from the company.

[5] The DVD with the surveillance recording was admitted into evidence.

[6] Twitter is a "social media forum[]." Hunter v. State Bar, ex rel. Third Dist. Comm., 285 Va. 485, 496, 744 S.E.2d 611, 616 (2013). "A [t]weet is any message posted to Twitter which may contain photos, videos, links . . . and text." Sublet v. State, 113 A.3d 695, 698 n.9 (Md. 2015) (quoting New User FAQs, Twitter, https://support.twitter.com/articles/13920-new-user-faqs (last visited Apr. 20, 2015)).

room and text advertising a money counter for sale. Agent Brown verified that the tweet was sent from the appellant's phone.

Additionally, Agent Brown testified that he recovered some text messages that were sent from the phone. The text messages admitted into evidence included messages sent from the appellant's phone between August 24 and 27, 2015. The messages communicated that the sender was selling money counters and a "mack book . . . pro" with the serial number "c02p1hbxg3qh." The sender also noted that he "got a new bmw" the previous night that he "shoulda kept."

The appellant objected to the admission of the tweet and the text messages, arguing that the identity of the sender was not proved. The Commonwealth countered that the appellant had sent the messages from his own phone and that they were admissible because they were not hearsay or, alternatively, they were party admissions, a recognized exception to the rule against hearsay. The trial court overruled the objection, noting that the tweet and text messages were sent from "his phone, the phone he used."

The jury found the appellant guilty of three counts of breaking and entering and three counts of grand larceny. On these convictions, the court sentenced the appellant to a total of ninety years of incarceration, with seventy-five of those years suspended. The fifteen years remaining consisted of three sets of five years each to be served concurrently, leaving the appellant with five years of active incarceration.

## II. ANALYSIS

The appellant challenges his convictions for breaking and entering and grand larceny. He argues that the trial court erred by admitting the evidence of the twenty text messages and the written message portion of the single tweet found on his cellular telephone. He contends that the evidence lacked an adequate foundation because the Commonwealth did not prove that he was

the person who sent the tweet or the text messages.[7] For the reasons that follow, we conclude that the Commonwealth proved by a preponderance of the evidence that the appellant was the person who sent the challenged tweet and text messages from his phone.

The standard of review on appeal is well settled. "[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." Adjei v. Commonwealth, 63 Va. App. 727, 737, 763 S.E.2d 225, 230 (2014) (alteration in original) (quoting Beck v. Commonwealth, 253 Va. 373, 384-85, 484 S.E.2d 898, 905 (1997)). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Thomas v. Commonwealth, 62 Va. App. 104, 111-12, 742 S.E.2d 403, 407 (2013) (quoting Hamad v. Hamad, 61 Va. App. 593, 607, 739 S.E.2d 232, 239 (2013)). A reviewing court can conclude that "an abuse of discretion has occurred" only in cases in which "reasonable jurists could not differ" about the correct result. Commonwealth v. Swann, 290 Va. 194, 197, 776 S.E.2d 265, 268 (2015) (quoting Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009)). "[B]y definition," however, a trial court "abuses its discretion when it makes an error of law." Coffman v. Commonwealth, 67 Va. App. 163, 166, 795 S.E.2d 178, 179 (2017) (quoting Commonwealth v. Greer, 63 Va. App. 561, 568, 760 S.E.2d 132, 135 (2014)).

---

[7] Consistent with his brief, the appellant confirmed at oral argument that the sole issues on appeal are the adequacy of the foundation for admission of the tweet and text messages and whether this purported authentication error was harmless. He references hearsay and the party admission exception to the rule against hearsay solely in the context of his challenge to the foundation for the admission of the evidence. See, e.g., Walters v. Littleton, 223 Va. 446, 451, 290 S.E.2d 839, 842 (1982) (recognizing that although issues of authentication and hearsay sometimes overlap, they are separate issues). Consequently, we address hearsay and the party admission exception only to the extent required by this overlap.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). If evidence is hearsay, "[it] is inadmissible unless it falls within one of the recognized exceptions" to the rule against hearsay. Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 476 (1999); see also Va. R. Evid. 2:802. "[A]n out-of-court statement by a criminal defendant, if relevant, is admissible as a party admission, under an exception to the rule against hearsay." Bloom v. Commonwealth, 262 Va. 814, 820, 554 S.E.2d 84, 87 (2001).

To meet the party admission exception to the rule against hearsay, the Commonwealth must first establish that the hearsay statement was in fact made by the party, in this case, the appellant. See Va. R. Evid. 2:901 ("The requirement of authentication or identification is a condition precedent to admissibility that is satisfied by evidence sufficient to support a finding that the thing in question is what the proponent claims."). This principle holds true universally and applies equally to statements made over the telephone, through text messages, by emails, or using social media such as Twitter.[8] See Bloom v. Commonwealth, 34 Va. App. 364, 369-70, 542 S.E.2d 18, 20 (2001) (holding that internet conversations conducted through instant messaging are in some respects "analogous to telephone conversations"), aff'd, 262 Va. 814, 554 S.E.2d 81 (2001); cf. Walters v. Littleton, 223 Va. 446, 451, 290 S.E.2d 839, 842 (1982) ("All writings are subject to the requirement of authentication, which is the providing of an evidentiary basis sufficient for the trier of fact to conclude that the writing came from the source claimed.").

---

[8] Other jurisdictions considering the issue have reached the same conclusion. See, e.g., United States v. Browne, 834 F.3d 403, 411-13 (3d Cir. 2016), cert. denied, 137 S. Ct. 695 (2017); United States v. Brinson, 772 F.3d 1314, 1320-21 (10th Cir. 2014); Smith v. State, 136 So. 3d 424, 432-34 (Miss. 2014); Commonwealth v. Koch, 39 A.3d 996, 1002-05 (Pa. Super. Ct. 2011); Butler v. State, 459 S.W.3d 595, 600-01 (Tex. Crim. App. 2015); State v. Francis, 455 S.W.3d 56, 69-73 (Mo. Ct. App. 2014); Symonette v. State, 100 So. 3d 180, 183 (Fla. Dist. Ct. App. 2012); State v. Roseberry, 967 N.E.2d 233, 243-44 (Ohio Ct. App. 2011).

The appellant contends that the evidence in the record did not meet minimum standards to support the admissibility of the texts and tweet. He argues that the Commonwealth failed to establish that he was the author of these messages. "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." Bloom, 262 Va. at 821, 554 S.E.2d at 87 (quoting Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 296 (1975)). Although the type of evidence used to prove the identity of the person making the statement may vary based in part upon the medium used to convey the message, the governing legal standard is the same—proof by a preponderance of direct evidence, circumstantial evidence, or a combination of both. See id. at 820-21, 554 S.E.2d at 87; see also Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 17-1, at 1164 (7th ed. 2012) ("[A]uthentication does not set a high barrier to admissibility, and is generally satisfied by any form of proof that supports a finding that it is what it purports to be."). Further, it is well established that "[t]he completeness of the identification goes to the weight" afforded "the evidence rather than its admissibility," with the responsibility of determining the threshold question of admissibility resting with the trial court. Armes v. Commonwealth, 3 Va. App. 189, 193, 349 S.E.2d 150, 153 (1986) (quoting State v. Williamson, 502 P.2d 777, 780 (Kan. 1972)).

Under the applicable preponderance of the evidence standard, the record supports the trial court's finding that the appellant was the person who made the written statements contained in the tweet and text messages sent from his own phone from August 25 through 27, 2015. The appellant admitted that the passcode-protected phone from which the tweet and text messages were sent was his phone. He knew the passcode for the phone and provided it to law enforcement. In addition, a social media app installed on the phone had been created with an email address using the appellant's name. Further, the unobjected-to-photograph of the stolen

money counter contained in the tweet was the same money counter found in the appellant's bedroom.[9] This evidence clearly met the baseline foundational requirement of proving by a preponderance that the appellant was the person who sent the text messages and the tweet from his cell phone. Thus, the trial court did not abuse its discretion in concluding that the Commonwealth sufficiently authenticated the challenged text messages and tweet to render them admissible for the jury's consideration.

### III.  CONCLUSION

The Commonwealth proved by a preponderance of the evidence that the appellant was the person who sent the challenged tweet and text messages from his phone. Consequently, the trial court's admission of the evidence was not an abuse of discretion, and we affirm the convictions. We remand the case solely for the correction of a clerical error in the sentencing order, which incorrectly lists one of the case numbers as CR150001240-03 instead of CR15000124-03. See Code § 8.01-428(B); Howell v. Commonwealth, 274 Va. 737, 739 n.*, 742, 652 S.E.2d 107, 108 n.*, 109 (2007).

Affirmed and remanded.

---

[9] Although the appellant objected to the admission of the text in his tweet, he agreed that the photograph contained in the tweet was not hearsay. See Bynum v. Commonwealth, 57 Va. App. 487, 493, 704 S.E.3d 131, 134 (2011) (holding that a photograph is not a statement and thus does not constitute hearsay).