COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Malveaux, White and Senior Judge Annunziata

TRAVIS LEE WILLIAMS

                                                   MEMORANDUM OPINION[*] BY

v.       Record No. 1558-24-4         JUDGE KIMBERLEY SLAYTON WHITE
                                              DECEMBER 30, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PAGE COUNTY
Clark A. Ritchie, Judge

(Tara M. Senn; David L. Parker, P.C., on brief), for appellant.

(Jason S. Miyares, Attorney General; Jason D. Reed, Senior
Assistant Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Travis Lee Williams of possession of a

Schedule I or II controlled substance with the intent to distribute, a second offense.  On appeal,

Williams argues that the circuit court made three errors.  First, the court erred in admitting

photographs of messages from his phone without properly establishing their foundation.  Second,

the photographs contained inadmissible hearsay.  Third, the court incorrectly imposed a ten-year

active sentence.  We find no circuit court error and affirm the judgment.[1]

BACKGROUND

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,'

the prevailing party below."  *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the facts and legal arguments are adequately presented in
the briefs and record, and the decisional process would not be significantly aided by oral
argument."  *See* Code § 17.1-403(ii)(c).

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). "This well-settled principle of appellate review 'requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."' *Wandemberg v. Commonwealth*, 70 Va. App. 124, 133 (2019) (quoting *Camp v. Commonwealth*, 68 Va. App. 694, 698 (2018)).

Around 1:00 a.m. on July 11, 2022, Page County Sheriff's Deputy Kevin Clem stopped Williams for driving a vehicle with an altered exhaust pipe. Williams was the sole occupant of the car. Shenandoah Police Officer John Fry arrived and assisted with the stop. Deputy Clem learned that Williams was on probation and had waived his Fourth Amendment rights as a condition of his probation. Deputy Clem searched Williams's person, and Officer Fry searched his car. On the back seat, Officer Fry found a magnetic box containing methamphetamine residue.

Page County Sheriff's Corporal Joshua Kopp also responded to the scene. Corporal Kopp looked through Williams's phone, reviewing text messages, social media messages, and photographs. In the messages, he was looking for "any kind of drug or drug transactions." In the photograph gallery, he was looking for "pictures of drugs, pictures of narcotics usage and firearms." He asked Williams if he knew what was on the phone and Williams said, "nothing's on the phone." Corporal Kopp took photographs of some of the messages and pictures on the phone and obtained a warrant to search the entire contents of the device.

Law enforcement drove Williams to his residence, where he was later arrested and charged with possession of a controlled substance.[2] Williams was released from custody following the arrest the same day.

Later that day, Page County Sheriff's Deputy Dakota Alger stopped Williams to serve him with a warrant for violating his probation. Before placing Williams in his police vehicle, Deputy

---

[2] The jury found Williams not guilty on the charge that stemmed from this early morning.

Alger asked Williams if "he had anything on him." Williams responded that he did and pulled a bag of methamphetamine "out of his private area." The bag contained approximately ten grams of methamphetamine. Williams was charged with possession of a Schedule I or II controlled substance, with the intent to distribute, a second offense, stemming from this later traffic stop.

Photographs of Williams's phone screen revealed Facebook messages with several different people. The phone contained the following message exchanges:

Messages with Alkini

Alkini: When u gonna be here
Williams: Give me few
Alkini: I already walked back to camper let me kn when u coming please
Alkini: I need the b and g bagged separate pls
Alkini: ??
Alkini: Hello
Alkini: Yo
Alkini: So I guess u not coming
Alkini: Hey I still need that b tmw ok
Alkini: So guess ima walk back to my spot smh
Alkini: I need a whole b for 160 and a g for my 40
Alkini: So I got 160 cash and my 40 in cash app
[You missed a call from Alkini.]
Alkini: ??
Alkini: So I got 160 cash and my 40 in cash app so I need a whole b and a g for my 40 buxs
Alkini: When u gonna be here
Williams: Give me few
Alkini: I already walked back to camper let me kn when u coming please

Messages with Cierra

Williams: What
Cierra: I'm sick as a dog for some reasn
[Cierra called you.]
[You called Cierra.]
Cierra: I got someone here needs a b
Williams: Ok be there in 20min
Cierra: How much
Williams: 150?
Cierra: Yeah that's cool

- 3 -

Messages with Nicky

Nicky: Can u front any til later tonight I have 2 wanting now
Williams: Let me see what I gt
Nicky: How much u charge for b
Williams: 150 I can't frnt anything I barley got a ball an half
Nicky: K let me see if I can get there money I have 2 wantn hb
Williams: Ok

Messages with Logan

Logan: Shenandoah
Williams: Ight u gt 250 I'll give ya 2bs
Logan: Ain't coming off all my money havento pay my dude
Williams: Ima just piece this little shit out then can't afford anything else just hmu later
Logan: Huh
Logan: Bruh
Williams: Yeah
Williams: U need make money an so do I buddy I. Can't cut deal rn I need cut throats
Logan: So ur not comin??
Williams: I mean I can't cut a deal u want
Logan: You got anything
Williams: How much
Logan: 2bs
Logan: Like qn hour ago would be nice I have 2
Williams: Give ya b an half
Logan: Damn bro you gonna get me like that
Williams: Dam buddie hate to but I gt to
Logan: You owe me money and you gonna tax m3 like that
Williams: It's not like that buddy only got a little left an then im dne

Messages with Dakota

Williams: Lmao I feel ya bud
Dakota: Fuck you doing
Williams: Chilling on naked creek
Williams: U got any money u can throw in on some shit
Dakota: Not until Monday all I got is a pipe full lol
Williams: Dam
Williams: Wyd
Dakota: Bored lol wyd 7

Page County Sheriff's Investigator Jarrett Hall testified as an expert in narcotics

investigations. He stated that the "B" in several messages stood for "eight ball," which is

approximately 3.5 grams of methamphetamine. The "G" referenced in some of the messages stood for a gram. Investigator Hall opined that possession of ten grams of methamphetamine was inconsistent with possession for personal use.

Williams objected to the admission of the photographs of Facebook messages, arguing that the Commonwealth had failed to lay a proper foundation. He asserted that because the messages were Facebook messages and not text messages, the Commonwealth had not authenticated them. Williams argues that the evidence was insufficient to prove that the Facebook account belonged to him. Williams also objected on hearsay grounds. The Commonwealth countered, stating that the messages were being introduced not for the truth of the matters asserted, but to demonstrate Williams's state of mind.

The trial court held that the Commonwealth had established an adequate foundation for the Facebook messages. Specifically, the trial court emphasized that Williams was the only occupant of the car in which the phone was located. In addition, it found both photographs on the phone and Williams's statement, "nothing's on the phone," linked him to the device. Moreover, the trial court further held that the conversations between Williams and potential customers were admissible because the customers' statements provided context to Williams's statements and were not offered for the truth of the matters asserted.

The jury found Williams guilty of the charged offense. At sentencing, Williams argued that a three-year sentence was adequate.[3] The Commonwealth argued that three years was "wholly too light" because this was Williams's second conviction for drug distribution in two years. Emphasizing that Williams committed the new offense just months after he was released from incarceration for his first offense, the court concluded that Williams's previous sentence was not

---

[3] The sentencing guidelines recommended a range of 11 months to 2 years and 2 months of incarceration.

- 5 -

sufficient to deter him from future criminal conduct. The court found the guidelines "wholly inadequate" and sentenced Williams to 25 years of incarceration with 15 years suspended. Williams appeals.

ANALYSIS

I. The Circuit Court Did Not Commit Error in Admitting Screenshots of Messages Recovered from Williams's Phone

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "An abuse of discretion occurs 'when a relevant factor that should have been given significant weight is not considered' or 'when an irrelevant or improper factor is considered and given significant weight.'" *Diaz*, 80 Va. App. at 304 (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "In evaluating whether a trial court abused its discretion, . . . '[this Court does] not substitute [its] judgment for that of the trial court. Rather, [this Court] consider[s] only whether the record fairly supports the trial court's action.'" *Id.* at 304-05 (alterations in original) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* at 305 (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 749 (2019)).

"[A]uthentication does not set a high barrier to admissibility, and is generally satisfied by any form of proof that supports a finding that it is what it purports to be." *Atkins v. Commonwealth*, 68 Va. App. 1, 9 (2017) (alteration in original) (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* § 17-1, at 1164 (7th ed. 2012)). "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." *Id.* (quoting *Bloom v. Commonwealth*, 262 Va. 814,

821 (2001)). "Although the type of evidence used to prove the identity of the person making the statement may vary based in part upon the medium used to convey the message, the governing legal standard is the same—proof by a preponderance of direct evidence, circumstantial evidence, or a combination of both." *Id.* "Further, it is well established that '[t]he completeness of the identification goes to the weight' afforded 'the evidence rather than its admissibility,' with the responsibility of determining the threshold question of admissibility resting with the trial court." *Id.* (alteration in original) (quoting *Armes v. Commonwealth*, 3 Va. App. 189, 193 (1986)). Moreover, "[t]he authentication inquiry is a narrow one and is only concerned with the genuineness of the offered evidence." *Canada v. Commonwealth*, 75 Va. App. 367, 377 n.4 (2022). Indeed, "a finding that evidence is authentic says nothing about the weight the factfinder should attach to that evidence." *Id.*

Here, Williams was the sole occupant of the car at the time of the stop and was in possession of the phone. He expressed his familiarity with the phone and its contents when he told the police that there was nothing on the phone. Corporal Kopp accessed the phone and photographed some of the messages. Corporal Kopp verified the accuracy of the exhibits at trial. A picture of Williams holding a gun with a glass smoking device in his mouth was on the phone. There were also videos and messages between Williams and family members. The trial court did not abuse its discretion when it determined that these facts combined with the content of the messages established that the phone belonged to Williams and the messages were sent by him. The record supports the trial court's authentication ruling.

II. The Circuit Court Did Not Err in Admitting the Text Messages

Once authenticated, Williams's own statements in the messages were admissible. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "If evidence is

hearsay, '[it] is inadmissible unless it falls within one of the recognized exceptions' to the rule against hearsay." *Atkins*, 68 Va. App. at 7-8 (alteration in original) (quoting *Robinson v. Commonwealth*, 258 Va. 3, 6 (1999)); *see also* Va. R. Evid. 2:802. "[A]n out-of-court statement by a criminal defendant, if relevant, is admissible as a party admission, under an exception to the rule against hearsay." *Atkins*, 68 Va. App. at 8 (alteration in original) (quoting *Bloom*, 262 Va. at 820).

Williams's messages were admissible as party admissions. "To meet the party admission exception to the rule against hearsay, the Commonwealth must first establish that the hearsay statement was in fact made by the party, in this case, the appellant." *Id.* "This principle holds true universally and applies equally to statements made over the telephone, through text messages, by emails, or using social media such as Twitter." *Id.*

Regarding the statements of Williams's contacts, "[w]e have squarely held that out-of-court statements are not hearsay when offered to provide context for the defendant's admissions in response." *Harris v. Commonwealth*, No. 1653-22-2, slip op. at 5 (Va. Ct. App. Apr. 9, 2024). In *Jones v. Commonwealth*, 71 Va. App. 597 (2020), we held that the victim's recorded statements during a phone conversation with the appellant did not classify as hearsay since they were not offered for their truth. *Id.* at 605. Rather, it was "[a] statement offered to provide context to an admission." *Harris*, slip op. at 5-6 (alteration in original) (quoting *Swain v. Commonwealth*, 28 Va. App. 555, 560 (1998)).

In *Bennett v. Commonwealth*, 69 Va. App. 475 (2018), we held that the audio recording of the defendant's phone call with a confidential informant was admissible to demonstrate the defendant's reaction to the informant's mention of buying "funny sticks," "a whole 3.5," or an "eight ball" of cocaine. *Id.* at 490. We reasoned that the statements were not hearsay because "the informant's statements were not offered for the literal truth of whether he wanted the specified drugs." *Id.* at 490. Likewise, in *Swain*, we held that a witness's response to the defendant's asking

"what do you want" was not admitted for the literal truth that she wanted "a twenty" of cocaine, but to provide context that the defendant's inquiry was an offer to sell drugs. 28 Va. App. at 559. As a result, throughout these cases, we have reaffirmed that "words offered solely to give context to party admissions are not hearsay and are admissible." *Id.* at 560.

Here, the incoming text messages to Williams's phone were admissible to provide context for his admissions. Without the incoming messages, Williams's outgoing messages would lack context and be incomprehensible. It is immaterial whether Williams's contacts actually wanted to purchase drugs when they messaged him. Instead, the messages show that Williams's replies offered to sell his contacts drugs, establishing his intent to distribute. Thus, the trial court did not abuse its discretion in admitting the text messages.

III. The Circuit Court Did Not Abuse its Discretion when it Sentenced Williams to an Active Sentence of Ten Years

Williams contends that the trial court abused its discretion by imposing an active sentence of ten years. This Court reviews the trial court's sentence only for an abuse of discretion. *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Id.* at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* The trial court was entitled to consider Williams's mitigating evidence and circumstances, but the trial court was not required to give Williams's mitigating circumstances controlling effect. *Sheets v. Commonwealth*, 80 Va. App. 706, 718 (2024).

- 9 -

"The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). "[T]he recommended sentencing ranges contained in these discretionary guidelines are not binding on the trial judge but, rather, are mere tools to be used by the judge in fixing an appropriate sentence within the limitations established by the statute governing punishment for the particular crime." *Luttrell v. Commonwealth*, 42 Va. App. 461, 465 (2004). A judge's failure to follow the sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F). Accordingly, we may only consider whether the sentence fell outside the permissible statutory range. *See Smith v. Commonwealth*, 26 Va. App. 620, 626 (1998); *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994).

Here, Williams's ten-year sentence was within the statutory limit prescribed by the General Assembly. Thus, the circuit court did not abuse its discretion. Under Code § 18.2-248(C), a defendant who is found guilty of a second offense of possession of a Schedule I or II drug with the intent to distribute it faces a range of punishment of 5 years to 40 years. We have repeatedly affirmed that "[a] Virginia trial court 'clearly' acts within the scope of its sentencing authority 'when it chooses a point within the permitted statutory range' at which to fix punishment." *Minh Duy Du*, 292 Va. at 564 (quoting *Alston*, 274 Va. at 771). Hence, "once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Therefore, Williams's "sentence was within the statutory range, and [thus] our task is complete." *Id.*

CONCLUSION

Accordingly, for the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*